Filed 9/23/21; Certified for publication 10/22/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| YENI NAJARRO et al., | |
| Petitioners, | E076328 |
| v. | (Super.Ct.No. CIVDS1925797) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| HORIZON PERSONNEL SERVICES, INC., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition granted in part and denied in part. Elia V. Pirozzi, Judge.

Milon Pluas, Joshua Milon, Angel D. Pluas; Hannemann Law Firm and Brian G. Hannemann; Law Offices of Marc D. Mabile and Marc D. Mabile for Petitioners.

No appearance for Respondent.

1

Gordon Rees Scully Mansukhani, Roger M. Mansukhani, Carrie A. Stringham and Andrew S. Wellman for Real Parties in Interest Horizon Personnel Services, Inc., and Stay Safe Staffing, Inc.

Epstein Becker & Green, Richard J. Frey, David M. Prager and Devin S. Lindsay for Real Party in Interest J & J Snack Foods Corp. of California.

In a companion case, where an employee claimed she was forced to sign an arbitration agreement after litigation had commenced and without the benefit of her counsel, we issued an order to show cause why relief should not be granted. Although this case generally does not present the same factual scenario, we issued an order to show cause following motions to compel arbitration because this case was ordered related to the other and involves the same defendants.

Here, the trial court granted the motions for eight employees, each of whom signed one of two versions of arbitration agreements. Because the first version does not clearly and unmistakably delegate questions of arbitrability to the arbitrator, we grant the writ petition as to the employees who signed that version. As to two of these employees, the trial court must decide whether this first version is unconscionable, guided by our discussion below. As to the other two employees who signed this version, we find that the arbitration agreement is unenforceable for the separate reason of fraud in the execution. We also find that fraud in the execution voids the agreement for two of the employees who signed the other, second version of the arbitration agreement. For

2

reasons substantially similar to those stated in the companion case, we deny the petition as to the remaining two employees who signed the second version.

## I. FACTUAL AND PROCEDURAL HISTORY

In August 2019, petitioners filed suit against real parties in interest Horizon Personnel Services, Inc. (Horizon), Stay Safe Staffing, Inc. (Stay Safe), and J & J Snack Foods Corp. of California (J&J), Raul Perez, and Crisanto Vargas, among other defendants, alleging 18 employment-related causes of action. Real parties in interest filed their answers in November, which is also when the trial court ordered the case related to the companion case mentioned above.[1]

In January 2020, Horizon, Stay Safe, Perez, and Vargas moved to compel petitioners' cases to arbitration. J&J filed notices of joinders to the motions. The motions were based on two versions of arbitration agreements each of the petitioners had signed. The first version, which we will refer to as Version One, was signed by Najarro,

---

[1] The petitioners are Yeni Najarro, Paloma Rios, Soraya Mendivar, Maria Sanchez, Fidel Urias, Emerson Velasco, Martha Serrano, and Maria Munoz. Alma Diaz is a plaintiff in the action, but because real parties in interest did not move to compel her to arbitration, she is not a part of this writ petition.

In all, the record shows that there are three consolidated or related cases involving real parties in interest. The first case, *Alba v. Horizon Personnel Services, Inc.* (Super. Ct. San Bernardino County, No. CIVDS1710291), was filed in May 2017. The second case, *Villanueva v. Horizon Personnel Services, Inc.* (Super. Ct. San Bernardino County, No. CIVDS1909864), was filed in April 2019, consolidated with the first case, and is the companion case referred to above. (*Villanueva v. Superior Court* Aug. 11, 2021, E076054 [nonpub. opn.]).) The writ petition before us in this opinion concerns the third case, *Najarro v. Horizon Personnel Services, Inc.* (Super. Ct. San Bernardino County, No. CIVDS1925797).

3

Serrano, Mendivar, and Munoz.  The other version, which we will refer to as Version

Two, was signed by Urias, Velasco, Sanchez, and Rios.  Unlike in the companion case,

where the arbitration agreement at issue was signed after litigation had commenced, here

the parties agree that petitioners signed either Version One or Version Two when they

were hired.[2]  Seven of the eight petitioners signed Spanish versions of Version One or

Version Two; Urias signed an English version of Version Two.[3]

Version One contains the following provisions:

"Binding Arbitration.  [¶] . . . [¶]  This [a]greement is governed by and enforceable

under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et. seq.  [¶] . . . [¶]

"Arbitrator's Authority. . . . Except as expressly provided for above with respect to

group, collective, or representative actions, the arbitrator shall have the exclusive power

to resolve any dispute relating to the interpretation, applicability, enforceability, or

---

[2]  One of the petitioners, Martha Serrano, stated that she was made to sign another arbitration agreement after the lawsuit had commenced, but because real parties in interest's motions were not based on this later agreement, we do not address it in our analysis.

[3]  As in the companion case, here petitioners' citations to the arbitration agreements are to exhibits containing both an unsigned, English version in addition to the signed, Spanish agreements.  In their return, real parties in interest cite to translations of the signed, Spanish agreements.  We cite to the translated versions included with real parties in interest's exhibits below and note that the parties have not contended in briefing that there is any substantive difference among any of the versions.  Specifically, we note that petitioners cited to and relied on language in the English version of Version Two that "any dispute regarding whether a claim may be arbitrated on a *class*, collective, or representative basis may only be resolved by a court of competent jurisdiction" (emphasis added), and thus reject petitioners' contention, made for the first time at oral argument, that the replacement of the word "class" with "group" in the translated Spanish versions of both Version One and Version Two carries legal significance.

formation of this [a]greement, including but not limited to the assumption that any section of this [a]greement is unenforceable, null or void. [¶] . . . [¶]

"Severability. Except as expressly provided above in relation to class, group, or representative actions, if the arbitrator or any judge of competent jurisdiction determines that any provision of the JAMS Rules or this [a]greement is illegal, invalid, or unenforceable, such provisions shall be severed or modified so that the remainder of the [a]greement shall apply to the fullest extent permitted by law." (Bolding and italics omitted.)

Version Two contains the following provisions:

"Arbitrator's Authority. Except as expressly provided for above with respect to group, collective, or representative actions, the arbitrator shall have the exclusive power to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this [a]greement, including the assumption that this [a]greement is unenforceable. [¶] . . . [¶]

"Severability. In the event that any provision of the [applicable arbitration rules or standards] or this [a]greement is held to be unenforceable, such provision shall be eliminated or modified without affecting the enforceability of the remaining provisions in the [a]greement. [¶] . . . [¶]

"Applicable Legislation. The interpretation and execution of this [a]greement shall be governed by the Federal Arbitration Act." (Bolding omitted.)

In their oppositions, petitioners contended that real parties in interest used coercive tactics to get petitioners to sign the arbitration agreements, including by physically covering the words of the agreements with their hands, stating that the agreements were conditions of employment, pressuring petitioners to sign quickly, refusing to allow petitioners to remove the documents from the work facility, and misrepresenting that the documents related to health and insurance.

The trial court granted the motions. It determined that the agreements' enforceability must be determined by the arbitrator under the delegation clause and found, in the alternative, that the agreements were not substantively unconscionable. This writ proceeding followed.

## II. DISCUSSION

The differences in terms between Version One and Version Two—as well as the factual circumstances alleged by each employee—means that our analysis for each takes different paths, but we summarize our discussion below as follows.

Petitioners contend that both versions are unenforceable, unconscionable contracts and that the court is empowered to rule as such. Real parties in interest, on the other hand, argue that both contracts specify that it is the arbitrator alone who is empowered to determine whether the contracts are enforceable. In other words, real parties in interest argue that there is a valid delegation clause in each of the agreements. But even if the court could rule on either or both agreements' enforceability, real parties in interest contend that the agreements are enforceable.

6

Version One does not contain a valid delegation clause because its terms do not clearly and unmistakably provide that only the arbitrator may decide enforceability. The court is therefore empowered to determine whether the agreements are enforceable. Here, the trial court held that neither of the agreements were unconscionable because neither showed substantive unconscionability. Petitioners successfully demonstrate, however, that Version One contains at least some substantively unconscionable elements. With regard to procedural unconscionability, the trial court did not resolve a key factual dispute—namely, whether agreement to Version One was a condition of employment— or otherwise determine the existence or degree of procedural unconscionability. We therefore grant the petition as to those petitioners who signed Version One and, with respect to two of them, remand for the trial court to resolve the factual dispute before ruling on Version One's enforceability. With regard to two of the petitioners who signed Version One, we grant the petition with directions to the trial court to deny the motion to compel arbitration on the basis that they have sufficiently demonstrated fraud in the execution.

Version Two, on the other hand, contains a delegation clause that clearly and unmistakably provides for the arbitrator to determine any issues regarding enforceability. We therefore must enforce it unless we conclude that no agreement between the contracting parties ever existed due to a lack of mutual assent. As to two of the petitioners who signed Version Two, we find that fraud in the execution has negated that

mutual assent.  But because there is no basis for us to so conclude for the other two petitioners who signed Version Two, we deny the petition as to them.

*A.  Version One*

### *1.  Delegation Clause*

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'"  (*Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) 586 U.S. __, 139 S.Ct. 524, 529.)  But "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944.)  This is a "heightened standard," and it "pertains to the parties' manifestation of intent, not the agreement's validity."  (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 69, fn. 1 (*Rent-A-Center*), italics removed.)

Courts have held that "there is no clear and unmistakable delegation to the arbitrator" to decide arbitrability where the contract "includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision."  (*Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 209-210 (*Dennison*); see *Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1257-1258 [heightened standard not met because severability clause used the term "'trier of fact of competent jurisdiction,' rather than the term 'arbitrator,' indicating the court has authority to decide whether an arbitration provision is unenforceable."]; *Parada v. Superior Court* (2009) 176

8

Cal.App.4th 1554, 1566 ["Use of the term 'trier of fact of competent jurisdiction' instead of 'arbitration panel' or 'panel of three (3) arbitrators' suggests the trial court also may find a provision, including the arbitration provision, unenforceable."]; *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 893-894 (*Baker*) [heightened standard not met where "one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, [but] another provision indicated that the court might find a provision unenforceable"].)  In other words, pursuant to an exception discussed below, if a severability clause states that a *court* may excise unconscionable provisions, the delegation clause does not meet the heightened standard necessary for enforcement, because it is no longer clear that only the arbitrator may decide issues such as unconscionability.

Here, Version One's delegation clause fails to meet the heightened standard because of the severability clause.  Under the heading "Severability," Version One provides:  "Except as expressly provided above in relation to class, group, or representative actions, if the arbitrator *or any judge of competent jurisdiction* determines that any provision of the JAMS Rules or this [a]greement is illegal, invalid, or unenforceable, such provisions shall be severed or modified so that the remainder of the [a]greement shall apply to the fullest extent permitted by law."  (Italics added.)  As with the cases mentioned above, Version One allows a court to determine issues such as unconscionability.  Accordingly, following cases such as *Dennison* and *Baker*, we find

9

that there is no clear and unmistakable delegation to the arbitrator to decide enforceability.

Relying on *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880 (*Aanderud*), real parties in interest contend that cases such as *Dennison* do not apply. In *Aanderud*, the severability clause provided for severance of a provision if it was "'held to be invalid, prohibited, or otherwise unenforceable by an arbitrator or court of competent jurisdiction.'" (*Aanderud*, *supra*, at p. 894.) The provision thus seemed to be ambiguous as to whether a court could determine enforceability. However, because elsewhere the agreement stated that the parties agreed to resolve disputes "through binding arbitration or small claims court instead of courts of general jurisdiction," the court found no ambiguity, and the heightened standard was met. (*Id.* at pp. 886, 894.) The court construed the arbitration provision to mean the agreement "expressly state[d] that any disputes, which include those over the scope and applicability of the arbitration provision, are to be resolved through binding arbitration except those within small claims court jurisdiction. Since arbitration is not at issue in a small claims court action, the small claims court can only find unenforceable provisions of the [agreement] other than the arbitration provision." (*Ibid.*) In other words, *Aanderud* found it clear enough that the term "court of competent jurisdiction" in the severance clause could only mean small claims court.

Real parties in interest contend that *Aanderud* applies here because Version One's use of the phrase "any judge of competent jurisdiction" in the severability clause

necessarily refers to class, group, and representative actions, just as the reference to a "court of competent jurisdiction" in *Aanderud* referred to small claims court. The comparison has some initial appeal when we look only at Version One's delegation clause and the central, operative provision in the severability clause.

The problem with real parties in interest's argument here, however, is that the severability clause itself does not apply to class, group, or representative actions. In other words, Version One's severability clause begins with a carve-out for those actions: "*Except as expressly provided above in relation to class, group, or representative actions*, if the arbitrator or any judge of competent jurisdiction determines that any provision of the JAMS Rules or this [a]greement is illegal, invalid, or unenforceable, such provisions shall be severed or modified so that the remainder of the [a]greement shall apply to the fullest extent permitted by law." (Italics added.) Accordingly, it cannot be the case that the phrase "judge of competent jurisdiction" in the severability clause necessarily refers only to such collective actions, in the way the phrase "court of competent jurisdiction" in *Aanderud* necessarily referred to small claims court, because the severability clause here does not apply to collective actions at all. There therefore remains an ambiguity as to whether a court has the power to sever unenforceable provisions, and thus there is no clear and unmistakable delegation of the issue to the arbitrator.

In short, we find that the parties to Version One "did *not* agree to submit the arbitrability question itself to arbitration." (*First Options of Chicago, Inc. v. Kaplan*,

11

*supra*, 514 U.S. at p. 943.) It follows that "the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." (*Ibid.*) We therefore turn to petitioners' contention that Version One is unenforceable, starting with the doctrine of unconscionability.

### 2. *Unconscionability*

""""One common formulation of unconscionability is that it refers to '"an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."' [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."""" (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910 (*Sanchez*).)

""""The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.] Courts may find a

12

contract as a whole 'or any clause of the contract' to be unconscionable." (*Sanchez*, *supra*, 61 Cal.4th at p. 910.)

We begin with the trial court's finding that Version One contained no substantive unconscionability. This was error, as Version One is substantively unconscionable in at least two ways.

First, by stating that any covered dispute (such as claims for unpaid wages or rest or meal periods) "must be arbitrated in [an] individual capacity and not as a claimant or member of an alleged collective, group or representative action," Version One required those who signed it to waive any right to bring a representative action under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), despite the fact that "an employee's right to bring a PAGA action is unwaivable" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383). It is irrelevant that petitioners have not brought a PAGA action. (See *Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201, 212 [noting, in finding that PAGA waiver demonstrated substantive unconscionability, that the "question in determining unconscionability . . . does not involve comparing the terms of the arbitration clause with the nonarbitration claims" being pursued].)

Second, there is a lack of mutuality given that none of the Version One agreements were signed by any of the real parties in interest. In *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86 (*Carmona*), the Court of Appeal found a lack of mutuality in an arbitration clause between car wash companies

and employees where "only the employees initialed next to the clause, and only they signed the agreement." Citing our Supreme Court's decision in *Armendariz*, *Carmona* noted that "'the lack of mutuality can be manifested as much by what the agreements does not provide as by what it does.'" (*Carmona*, *supra*, at p. 86, citing *Armendariz v. Foundation Health Psychare Services, Inc.*, (2000) 24 Cal.4th 83, 120 (*Armendariz*); see also *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 674 ["there is what can be argued to be a lack of mutuality, illustrated by the fact that the agreement was signed only by the Davises, not by anyone at TWC"].) Actually, it is not only the fact that none of the Version One agreements were signed by any of the real parties in interest: Version One does not even purport to identify who the employee's counterparty is supposed to be. Throughout, Version One refers to the "Company," but Version One never identifies it as a specific person or otherwise specify which real party in interest is the other contracting party.[4]

As to procedural unconscionability, the trial court assumed, but did not find, that Version One was procedurally unconscionable. This means that the court did not resolve a core factual dispute between the parties, namely, whether those who signed Version One were required to do so as a condition of their employment. Each of the petitioners who signed Version One stated that they were told that they needed to sign Version One

---

[4] Version Two, on the other hand, identifies Horizon as the "Company," and the parties appear to agree that "Company" was intended to refer to Horizon in Version One as well.

in order to be hired.  Real parties in interest, on the other hand, directly dispute this, contending that employment is not conditioned upon the signing of an arbitration agreement.  As our Supreme Court has stated, "[a] procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126), and there can be "little dispute" that a contract is one of adhesion where it is "imposed on employees as a condition of employment" with "no opportunity to negotiate" (*Armendariz*, *supra*, 24 Cal.4th at pp. 114-115).[5]

Under both California and federal law, in determining whether parties should be compelled to arbitration, factual conflicts must be resolved at the trial court level. Accordingly, we are in no position to fully resolve the issue of procedural unconscionability here, and remand so that the trial court can resolve the dispute.  (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [in determining petitions to compel arbitration, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony

---

[5] If a contract is adhesive, the "pertinent question" then becomes "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required."  (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 126.)  "'"'*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form.'"'"  (*Ibid.*)  "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'"  (*Id.* at pp. 126-127.)

received at the court's discretion, to reach a final determination"]; *Jin v. Parsons Corporation* (D.C. Cir. 2020) 966 F.3d 821, 827 ["Section 4 [of the FAA] makes clear that the parties are entitled to have the correct venue—court or arbitration—established at the outset and, accordingly, requires any dispute on that issue be decided 'summarily' through a trial."]; *Meyer v. Uber Technologies, Inc.* (2d Cir. 2017) 868 F.3d 66, 74 ["If a factual issue exists regarding the formation of the arbitration agreement . . . remand to the district court for a trial is necessary"]; *Howard v. Ferrellgas Partner, L.P.* (10th Cir. 2014) 748 F.3d 975, 984 [noting that although "[i]t's understandable that everyone might want us to give the case a firm nudge (one way or the other) so the parties' dispute can finally progress past preliminary venue questions to the merits," "unresolved material disputes of fact block our way"].)[6]

We nevertheless agree with petitioners that, at a minimum, Version One demonstrates some degree of procedural unconscionability, whether or not those who signed them had an opportunity to negotiate its terms. By incorporating JAMS arbitration rules into Version One without providing petitioners a copy of those rules at the time they were asked to sign, petitioners establish at least some degree of procedural unconscionability. (See *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406 ["Here is

---

[6] We reject petitioners' contention, made at oral argument, that remand is unnecessary because the trial court determined that there was no evidence showing that signing an arbitration agreement is not a condition of employment. The trial court made no such determination. Rather, it stated that it would interpret Horizon's branch manager's statement to that effect as a statement of company policy and not one based on personal knowledge of each petitioner's circumstances. Accordingly, the trial court must still determine whether signing arbitration agreements was an actual condition of employment despite company policy to the contrary.

the oppression: The inability to receive full relief is artfully hidden by merely referencing the Better Business Bureau arbitration rules, and not attaching those rules to the contract for the customer to review. The customer is forced to go to another source to find out the full import of what he or she is about to sign—and must go to that effort *prior* to signing"].)[7]

We therefore conclude that two of the petitioners who signed Version One are, at a minimum, entitled to writ relief and the trial court's consideration of whether Version One is unconscionable.[8] As we now discuss, we additionally hold that, issues of unconscionability aside, petitioners Martha Serrano and Maria Munoz, who signed Version One, are entitled to relief on the ground that their arbitration agreements are void for fraud in the execution.

---

[7] We deny as irrelevant real parties in interest's motion for judicial notice, which sought judicial notice of the JAMS rules.

[8] Petitioners contend that even if those who signed Version One can be compelled to arbitrate their claims against those real parties in interest who filed the motion (i.e., Horizon, Stay Safe, Perez, and Vargas), the trial court erred in granting J&J's joinders because J&J is not entitled to enforce Version One. We reject the contention. "The agency exception is [an] exception to the general rule that only a party to an arbitration agreement may enforce it. [Citation.] The exception applies, and a defendant may enforce the arbitration agreement, 'when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement.'" (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 788.) The agency exception applies here. In their complaint, petitioners named each real party in interest as a defendant and alleged that "each [d]efendant was the employee, agent, and servant of each other defendants and in doing the things herein alleged, was acting within the course and scope of their authority as such, and with consent of each other defendant."

17

*3. Fraud in the Execution*

In addition to raising unconscionability, petitioners also broadly allege that all of the arbitration agreements were procured through fraud. The only type of fraud they specifically raise and discuss, however, is fraud in the execution. Accordingly, we address only fraud in the execution and find that petitioners Martha Serrano and Maria Munoz have made sufficient showings on this issue.[9]

"California law distinguishes between fraud in the 'execution' or 'inception' of a contract and fraud in the 'inducement' of a contract . . . in the former case '"the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*. In such a case it may be disregarded without the necessity of rescission."'" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 (*Rosenthal*).) "[C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law. If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy." (*Id.* at p. 416.)

Notably, with regard to whether an agreement is void for fraud in the execution, our Supreme Court has held that "[o]ne party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent,

---

[9] On remand, the parties may raise, and the trial court resolve, other issues of enforceability.

18

if the second party had 'reasonable opportunity to know of the character or essential terms of the proposed contract.' (Rest.2d Contracts, § 163, p. 443.) If a party, with such reasonable opportunity, fails to learn the nature of the document he or she signs, such 'negligence' precludes a finding the contract is void for fraud in the execution." (*Rosenthal*, *supra*, 14 Cal.4th at p. 423.)

Although *Rosenthal* held that misrepresentations by themselves would not deprive the other party of a reasonable opportunity to discover the essential terms of an agreement, it also held that misrepresentations made to a party who had a limited understanding of English might warrant a different result. (*Rosenthal*, *supra*, 14 Cal.4th at p. 428 ["In light of plaintiffs' prior relationship with [the corporation], which they were led to believe was also the employer of Divine and Daikovich, their limited ability to understand English, and Divine and Daikovich's representations that their oral recitals accurately reflected the terms of the agreements, plaintiffs would not have been negligent in relying on the [corporation's] representatives instead of reading the agreements themselves."].) In so holding, *Rosenthal* relied on *C.I.T. Corp. v. Panac* (1944) 25 Cal.2d 547 (*C.I.T. Corp.*), an earlier case where our Supreme Court held that the fact that the defendant "did not have an understanding of the English language," "did not know they were signing a negotiable instrument," and were subjected to "'high pressure' selling methods" supported a finding of fraud in the execution. (*C.I.T. Corp.*, *supra*, at pp. 558-559, cited in *Rosenthal*, *supra*, 14 Cal.4th at p. 428.) Although *Rosenthal* and

19

*C.I.T. Corp.* addressed individuals' inabilities to understand English, its reasoning applies to other languages when a disputed contract is in that language.

In her declaration, Martha Serrano stated that she was born in Mexico and attended school up to the second grade, but has no formal education beyond that. As a result, she does not know how to read Spanish, and she does not know how to speak or read in English. She went to Horizon to seek employment at J&J. Once there, she was presented with a stack of documents to sign without an explanation of what each document meant. She was told she could not take the documents home.

Serrano stated that she had a difficult time completing the paperwork because she did not know how to read. She was asked, "'do you want to work or not?'" She replied, "[W]hat do these documents say? I don't know how to read," to which she was told, "It's okay, if you don't know how to read, then just sign them," adding that it was "nothing important." She signed a Spanish version of Version One. Nowhere in their motion to compel Serrano to arbitration, motion for joinder, or reply did real parties in interest refute these statements from Serrano with evidence.

Given Serrano's inability to read either Spanish or English, the fact she was told that her arbitration agreement and other agreements were unimportant, statements pressuring her to sign ("do you want to work or not?"), a lack of an explanation as to what she was signing despite her professed inability to understand, and an omission of any factual dispute as to these issues, we conclude that Serrano has adequately established fraud in the execution under *Rosenthal* and *C.I.T. Corp.*

Maria Munoz does not describe any difficulty understanding Spanish, but her declaration shows a lack of mutual assent as well. Munoz went to J&J to seek employment and went to a "glass window" where she was given a packet of documents to complete and sign. When she turned in the stack at the window, she expressed that she "did not understand some of the documents" she was signing, but nobody attempted to explain the documents to her. She continued: "While at the glass window, [d]efendants handed me another document to sign, which I believe to be the [a]rbitration [a]greement, stating, 'sign here,' without an opportunity to read what I was signing. Defendants just flipped to the signature page, put their hand over the document and had me sign, stating, 'it's just a requirement to work for the company,' and did not permit me to read it."

Munoz was not given a reasonable opportunity to understand the arbitration agreement she signed. While at the window, a J&J employee presented her with Version One, flipped to the signature page, obstructed her view of the document, and instructed her to sign. Unlike any other documents she may have signed then, she had no opportunity to review Version One's terms on her own, and the J&J employee refused to explain it to her in any amount of detail. On these facts, we conclude that Munoz has made a sufficient showing of fraud in the execution.

Accordingly, independent of whether Version One is unenforceable due to unconscionability, we find that fraud in the execution renders Version One void and unenforceable as to petitioners Martha Serrano and Maria Munoz.

21

*B. Version Two*

Our analysis for two of the petitioners who signed Version Two substantially mirrors that of the companion case decided alongside this one. We therefore deny the petition as to these individuals and offer only an abbreviated discussion below. For petitioners Emerson Velasco and Maria Sanchez, we find sufficient facts for fraud in the execution, and thus grant the petition for reasons similar to those discussed above with Serrano and Munoz.

*1. Delegation Clause*

In contrast with Version One, Version Two clearly and unmistakably delegates issues of arbitrability to the arbitrator. Under the heading "Arbitrator's Authority," Version Two provides: "Except as expressly provided for above with respect to group, collective, or representative actions, the arbitrator shall have the exclusive power to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this [a]greement, including the assumption that this [a]greement is unenforceable."[10] Version Two also contains no severability clause that would allow a court to sever unconscionable provisions. The fact that a court might have an ability to excise unconscionable provisions under Version Two in "group, collective or representative actions"—because such actions are carved out of the delegation clause—

---

[10] With one insubstantial exception—the word "for" following the beginning clause "[e]xcept as expressly provided," this provision is identical to the delegation clause considered in the companion case.

does not make the delegation clause ambiguous, because this is not a class, collective, or representative action.

Given that Version Two contains a valid delegation clause, under *Rent-A-Center*, in the absence of a *specific* challenge to the delegation clause (as opposed to challenges to the entirety of the arbitration agreement), we may only determine whether Version Two was entered into. Petitioners have not specifically challenged the delegation clause. Those petitioners who signed Version Two must have their enforcement challenges determined by the arbitrator unless they can show that they never entered into any agreement at all.

### 2. *Whether an Agreement Was Ever Concluded*

Despite the existence of a clear and unmistakable delegation clause, a court remains able to determine "whether any agreement between the parties 'was ever concluded.'" (*Rent-A-Center*, *supra*, 561 U.S. at p. 70, fn. 2.) In making this determination, courts apply "ordinary state-law principles that govern the formation of contracts." (*First Options of Chicago, Inc. v. Kaplan*, *supra*, 514 U.S. at p. 944.)

As noted earlier, claims of fraud in the execution are not arbitrable, because when fraud in the execution is involved, "the parties have not agreed to arbitrate any controversy." (*Rosenthal*, *supra*, 14 Cal.4th at p. 416.) "Fraud in the inducement, by contrast, occurs when '"the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud,

23

is *voidable*.  In order to escape from its obligations the aggrieved party must *rescind*.""""

(*Id.* at p. 415.)

As to petitioners Fidel Urias and Paloma Rios, we find that their claims regarding fraud would show, at most, fraud in the inducement, which would not negate the mutual assent necessary for a contract to exist in the first place.  Their claims of being told that the arbitration and other agreements were unimportant (or even that the agreements related only to health and insurance) do not show fraud in the execution.  "Such statements, even if falsely and fraudulently made, do not void a written contract, because it is generally unreasonable, in reliance on such assurances, to neglect to read a written agreement before signing it.  One party's making of such an assurance does not, by itself, deprive the other party to a prospective contract of the reasonable opportunity to discover the character and essential terms of the agreement." (*Rosenthal*, *supra*, 14 Cal.4th at p. 424, footnote omitted.)  Additionally, their claims that they were not given sufficient time to read the agreements, even if accepted as true, would not show a lack of mutual assent.  (See *ibid.*)  Each of these petitioners was given an opportunity to go through the documents given to them on their own after being handed a stack of documents.  Unlike Serrano, none of these petitioners stated that they could not read or understand Spanish, the language of Version Two they signed (in Urias's case, English).  We therefore find that these petitioners "had 'reasonable opportunity to know of the character or essential terms of the proposed contract.'" (*Id.* at p. 423, citing Rest.2d Contracts, § 163.)

Velasco and Sanchez, however, both described experiences similar to Munoz in that they were only presented with arbitration agreements after submitting other documents, not given an opportunity to review them on their own, and told to sign without either a basic explanation of its terms or even an opportunity to view it unobstructed. Velasco stated that when he applied for work at J&J, he turned in some of the required paperwork and asked for Spanish versions of documents he did not understand. He was presented with those documents the next day. He stated: "Defendants provided me with Spanish versions of the documents they still needed me to sign in order to continue working." "Defendants presented me with the documents, flipped to the signature pages and pointed where I needed to sign, and would not allow me to read over the documents, stating that they were the Spanish version of the documents that I had been provided with the day before and there was no need for me to read them." He continued: "I asked [d]efendants what the documents were for and they told me that the [c]ompany required that its employees sign these documents for 'insurance' purposes. Again, [d]efendants flipped to the signature page and told me to sign, without giving me even a few minutes to read over the documents. I believe these documents included the [a]rbitration [a]greement."

Sanchez similarly was never given a reasonable chance to review Version Two: After turning in some of the required paperwork at the window, she stated that "[d]efendants then printed out another document instructing me to sign, which I believe was the [a]rbitration [a]greement. Defendants put their hand over the document pointing

25

where I needed to sign, not allowing me to read over the document.  Defendants told me to hurry up and sign because it was late in the afternoon and they 'need[ed] to go soon.'  Defendants did not explain what the document was for, and simply told me that I had to sign the documents if I wanted to work for the company and to 'just sign.'"

We do not see how someone in Velasco or Sanchez's position would have had a reasonable opportunity to understand what they were agreeing to.  Not only were they repeatedly pressured to sign, they were never given any opportunity to review the agreement on their own and could not have even seen Version Two in full.  We therefore find that Version Two is void and unenforceable as to Velasco and Sanchez, despite the presence of a valid delegation clause, due to fraud in the execution.[11]

---

[11] We reject petitioners' contention that any delay in bringing real parties in interest's motions to compel constitutes waiver.  (See *Martin v. Yasuda* (9th Cir. 2016) 829 F.3d 1118, 1124 ["Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'"].)  Real parties in interest appeared in the case in November 2019 and moved to compel arbitration just two months later in January 2020.  Moreover, there is no indication in the record that any discovery had taken place in this case during those two months, as opposed to the consolidated and related cases, which petitioners' arguments as to waiver primarily focus on.  As the divergent analyses in this case and the companion case demonstrate, the fact that a defendant in one case has sought discovery against a different plaintiff does not mean that the defendant has acted inconsistent with a right to compel arbitration against another plaintiff in another case who signed a distinct version of an arbitration agreement.

Separately, J&J at oral argument contended that seven of the eight petitioners' declarations (with the exception of Urias') are inadmissible.  J&J did not raise an objection to the verification in its trial court filings, which would have given petitioners notice to potentially cure any evidentiary problem.  Though J&J objected at the hearing, it did not press the trial court for a ruling.  Likewise, in this court, J&J mentioned this objection in passing in its return, but did not develop or argue the issue.  This objection is forfeited.  In any event, petitioners' counsel personally verified in the traverse that he faithfully and accurately translated his clients' statements.

## III. DISPOSITION

Let a writ of mandate issue directing the superior court to (1) vacate its decisions on real parties in interest's motions to compel and joinder for Yeni Najarro, Soraya Mendivar, Maria Munoz, Martha Serrano, Emerson Velasco, and Maria Sanchez, (2) enter a new order consistent with the views expressed in this opinion determining whether Yeni Najarro and Soraya Mendivar may be compelled to arbitration, and (3) enter a new order denying the motion to compel and joinder for Maria Munoz, Martha Serrano, Emerson Velasco, and Maria Sanchez.  The petition is denied as to petitioners Fidel Urias and Paloma Rios.

Petitioners are DIRECTED to prepare and have the writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proofs of service on all parties.

The order to show cause is discharged and the stay previously ordered by this court is lifted when this opinion becomes final.

Petitioners to recover their costs.

RAPHAEL
J.

We concur:

CODRINGTON
Acting P. J.

SLOUGH
J.

27

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| YENI NAJARRO et al., | |
|     Petitioners, | E076328 |
| v. | (Super.Ct.No. CIVDS1925797) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | ORDER MODIFYING OPINION |
|     Respondent; | [NO CHANGE IN JUDGMENT] |
| HORIZON PERSONNEL SERVICES, INC., et al., | |
|     Real Parties in Interest. | |

THE COURT

The opinion filed in this matter on September 23, 2021 is modified as follows.

On pages 2-3, replace the first two paragraphs of the opinion with the following:

> In this employment dispute, the trial court granted motions to compel arbitration for eight employees, each of whom signed one of two versions of arbitration agreements. The ruling was based primarily on a finding that clear and unmistakable delegation clauses foreclosed the court from ruling on either agreement's validity. After the employees filed a writ petition in this court, we issued an order to show cause.

Given the differences between the two arbitration agreements as well as the factual circumstances each employee describes, we grant the petition in part, deny in part, and hold as follows. The first version does not clearly and unmistakably delegate questions of arbitrability to the arbitrator, so we grant the writ petition as to the employees who signed that version. As to two of these employees, the trial court must decide whether this first version is unconscionable, guided by our discussion below. As to the other two employees who signed this version, we find that the arbitration agreement is unenforceable for the separate reason of fraud in the execution.

Fraud in the execution also voids the agreement for two of the employees who signed the other, second version of the arbitration agreement. Because the second version has a clear and unmistakable delegation clause that petitioners have not specifically challenged, however, we deny the petition as to the remaining two employees who signed the second version.

On page 3, replace the first paragraph under the heading "I. FACTUAL AND PROCEDURAL HISTORY" with the following:

In August 2019, petitioners filed suit against real parties in interest Horizon Personnel Services, Inc. (Horizon), Stay Safe Staffing, Inc. (Stay Safe), J & J Snack Foods Corp. of California (J&J), Raul Perez, and Crisanto Vargas, among other defendants, alleging 18 employment-related causes of action.[1]

---

[1] The petitioners are Yeni Najarro, Paloma Rios, Soraya Mendivar, Maria Sanchez, Fidel Urias, Emerson Velasco, Martha Serrano, and Maria Munoz. Alma Diaz is a plaintiff in the action, but because real parties in interest did not move to compel her to arbitration, she is not a part of this writ petition.

In all, the record shows that there are three consolidated or related cases involving real parties in interest. The first case, *Alba v. Horizon Personnel Services, Inc.* (Super. Ct. San Bernardino County, No. CIVDS1710291), was filed in May 2017. The second case, *Villanueva v. Horizon Personnel Services, Inc.* (Super. Ct. San Bernardino County, No. CIVDS1909864), was filed in April 2019 and later consolidated with the first case. In a separate writ proceeding originally decided alongside this one, we denied the petition in an unpublished opinion following an order to show cause. (*Alba v. Superior Court* Sep. 23, 2021, E076054 [nonpub. opn.]).) The writ petition before us in this opinion concerns the third case, *Najarro v. Horizon Personnel Services, Inc.* (Super. Ct. San Bernardino County, No. CIVDS1925797), which was ordered related to the consolidated case in November 2019.

On page 4, replace the sentence beginning with "Unlike in the companion case" with the following (the footnote at the end of the sentence remains unchanged):

> Each petitioner signed either Version One or Version Two when they were hired.

On page 4, replace the first sentence of footnote 3 with the following:

> Petitioners' citations to the arbitration agreements are to exhibits containing both an unsigned, English version in addition to the signed, Spanish agreements.

On page 7, replace the sentence beginning with "We therefore must enforce it" with the following:

> Therefore, absent a *specific* challenge to the delegation clause, which petitioners have not made, we must enforce the delegation clause unless we conclude that no agreement between the contracting parties ever existed due to a lack of mutual assent.

On page 22, replace the paragraph under the heading "*B. Version Two*" with the following:

> The delegation clause in Version Two was clear and unmistakable. Accordingly, under the United States Supreme Court's decision in *Rent-A-Center*, we must enforce it unless a challenge is made specifically to the delegation clause. (*Rent-A-Center*, *supra*, 561 U.S. at p. 72.) Because petitioners have not made such a claim, only an arbitrator may rule on Version Two's validity. However, *Rent-A-Center* did not change a court's ability to determine "whether any agreement between the parties 'was ever concluded.'" (*Id.* at p. 70, fn. 2.) We apply "ordinary state-law principles that govern the formation of contracts" (*First Options of Chicago, Inc. v. Kaplan*, *supra*, 514 U.S. at p. 944), including fraud in the execution, which, as discussed above, renders a contract void for lack of mutual assent. For petitioners Fidel Urias and Paloma Rios, we find that their contentions do not rise to the level of fraud in the execution and thus deny the petition as to them. For petitioners Emerson Velasco and Maria Sanchez, however, we find sufficient facts for fraud in the execution, and thus grant the petition for reasons similar to those discussed above with Serrano and Munoz.

On page 22, remove footnote 10.

3

On pages 22-23, at the end of the paragraph beginning on page 22 and ending on page 23, add the following:

> (See also *Mohamed v. Uber Technologies, Inc.* (9th Cir. 2016) 848 F.3d 1201, 1209 [holding, regarding similar contractual language, that "the delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims except challenges to the class, collective, and representative actions waivers" in the arbitration agreements].)  Additionally, the fact that petitioners claim real parties in interest used coercive tactics to obtain the contracts does not mean a court must rule on the contract's validity as a whole before enforcing the delegation clause.  Although a dissenting minority of justices in *Rent-A-Center* supported this view, the majority rejected it, and we are bound by the majority's reasoning.  (See *Rent-A-Center*, *supra*, 561 U.S. at p. 82 ["when a party raises a good-faith validity challenge to the arbitration agreement itself, that issue must be resolved before a court can say that he clearly and unmistakably intended to *arbitrate* that very validity question"] (dis. opn. of Stevens, J.).)

On page 23, after the sentence beginning "Given that Version Two contains a valid delegation clause," add the following:

> (See *Rent-A-Center*, *supra*, 561 U.S. at pp. 72, 74 [arbitrator must determine validity because plaintiff had "challenged only the validity of the contract as a whole" and "did not make any arguments specific to the delegation provision"].)

On page 26, replace footnote 11 with the following:

> We reject petitioners' contention that any delay in bringing real parties in interest's motions to compel constitutes waiver.  (See *Martin v. Yasuda* (9th Cir. 2016) 829 F.3d 1118, 1124 ["Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'"].)  Real parties in interest appeared in the case in November 2019 and moved to compel arbitration just two months later in January 2020.  Moreover, there is no indication in the record that any discovery had taken place in this case during those two months, as opposed to the consolidated and related cases, which petitioners' arguments as to waiver primarily focus on.
>
> Separately, J&J at oral argument contended that seven of the eight petitioners' declarations (with the exception of Urias') are

4

inadmissible on the ground that they were submitted in English without any certified translations despite the declarants' inability to read or write in English. J&J did not raise such an objection in its trial court filings, which would have given petitioners notice to potentially cure any evidentiary problem. Though J&J objected at the hearing, it did not press the trial court for a ruling. Likewise, in this court, J&J mentioned this objection in passing in its return, but did not develop or argue the issue. This objection is forfeited. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 ["reviewing court is not required to develop the parties' arguments . . . and may instead treat arguments that are not developed . . . as waived"].) In any event, petitioners' counsel personally verified in the traverse that he faithfully and accurately translated his clients' statements.

Renumber the footnotes as appropriate.

The opinion is certified for publication. Except for these modifications, the opinion remains unchanged. This modification does not effect a change in the judgment.

CERTIFIED FOR PUBLICATION

RAPHAEL

J.

We concur:

CODRINGTON

Acting P. J.

SLOUGH

J.

5